Next case is 091403 Lincoln National Life Insurance Company v. Transamerica Life Insurance Company. Mr. Bauer. Thank you, Your Honors. May it please the Court. I'd like to start with the Step E argument and then turn to the Bilski issue and then, if there's time remaining, the Steps B and C issues. Let's be clear. This is a patent on a legal guarantee administered using a computerized method. Lincoln says it's not a patent on the rider, on the contract itself, but they base their case on accused riders. And the evidence and their argument always talk about accused riders. And now they say, although this doesn't cover a contract, that it's impossible to administer it in the 21st century without using computers. Lincoln has three fundamental problems it needs to overcome here. First, the undisputed evidence that Transamerica had no automatic, automated computer system in place to perform all of the Steps of 35. Second, that it has never performed all of the Steps of Claim 35 with a computerized method. And third, the fact that under the Bilski test, a legal guarantee cannot be patented. Now, with respect to Step E, we're not arguing here, and I want to be clear, we're not arguing that exhaustion, that even if step, is required for infringement. Judge Bennett and his Claim Construction Order made clear that... You're saying Payment 13 can infringe. I'm sorry? Payment 13 can infringe. I'm talking about Figure 6 in the patent. Figure 6 in the patent has Payments 1 through 15. Right. Payments 1 through 12 are being made when there's an account balance greater than the payment being made. Right. Payment 13 is the instance when you're drawing the account balance down to zero. Right. There's plus in the account, but not enough to pay. Right. That's right. And the trial judge, your client, tried to convince the trial judge originally that E only applied to exhaustion. And he got tired of that, and he finally kicked you down, right? And you were trying to avoid Payment 13 as long as you could, because Payment 13 is fully computerized up to the cutting of the check. That's right, Your Honor. And you want the jury to hear that. So I understand all that. That's right. And you're telling me now that E only really is talking about steps, about Payments 13, 14, and 15. No, Your Honor. E requires, there's two parts to Step E. It requires payments continuously from the beginning of time even after account balance is exhausted. So one thing to understand. Unless payments have been made. I'm sorry. Payments were made before. Right now. Payments are being made. The thing that hasn't happened, and there's never been a payment. Post-exhaustion. There's never been a payment 13, 14, or 15. Post-exhaustion. That's right, Your Honor. Well, that's on the way to exhausting as well as post-exhaustion. There's a difference. All right. So, Your Honor, the thing to understand, and this was an important limitation when they were at the patent office. They had essentially claimed that Step E. And then the difference is pre-exhaustion, the money comes from the customer's bank account. So this isn't just a matter of bank account balances and watching them in the singles computer system. Pre-exhaustion, the money comes from the customer's bank account. That account is managed by the Vantage system. Post-exhaustion, the money is insurance company money. It's money paid by the insurance company. The Vantage system cannot process that, and that was the evidence. So the payments are taken out of Vantage until the customer is out of money. When the customer is out of money, Vantage stops. That system grinds to a halt. And there's another computer system that's up and running to deal with those circumstances. You just hadn't plugged these riders into that one. And never have. But, I mean, you could. We could. Right. And that gets to the issue, Your Honor, of the claim. The claim requires a computerized method. It requires an automated method. What about the jury charge that allowed the jury to find infringement if they found that your sale on the riders obligated you to perform every step? And that is the issue we bring to this court, Your Honor. There is no evidence that there was an obligation, that the standard was necessarily required or obligated to use a computerized method. You didn't feel it necessary to challenge that jury charge. That jury charge, that's right, Your Honor. Because you say there's no evidence. That's what we're here today to argue, that there's no evidence. Right, Your Honor? Right, but, I mean, in the order of things, I mean, a promise to perform a method is not an infringing act, right? The promise to perform a method is not the infringing act. And that's what the charge says they could have found. Well, no, not the promise to perform, that you are obligated to use a computerized method. Right. So, Your Honor, A promise to use a computerized method to perform a method, the promise is not an infringing act. Right. But the jury was, in essence, told that they could find an infringing act out of a binding promise. But you didn't appeal that. Well, Your Honor, the patent owner told the jury that they could find an infringing act. We didn't challenge the jury instruction itself. Because the jury instruction, the jury was told two things. Either you're doing everything, or if you find Transamerica's doing everything, or if you find they're obligated to do everything. I think the case law of this court is that if you have something in your hand that has got everything there, and you're obligated to do it, physically do it, that actually it turned the switch on. I think that's the necessarily obligated. But how does that constitute infringement, counsel? I think what Judge Clevenger is saying is we're both sort of surprised that you appear to have missed a critical thing in this jury instruction that would have been advantageous for your client. Because the way I read it, okay, I tell you I'm going to bake an apple pie. And you say, I want you to use this recipe. It's patented by somebody. And I sign a contract saying I will bake you this apple pie according to this recipe. I then do not actually ever bake it. Have I committed infringement of that patent? Right. I asked you a question. Right isn't the answer. No, no. The promise to do it is not infringement. But you didn't object to a jury instruction that charged the jury that says simply being obligated amounts to infringement. Your Honor, the jury instruction, that's right. I think that since I wasn't there below, right, so this is outside the record what were people thinking. But when you look at that jury instruction, it's not all that inconsistent with the body of law here that says if you have something that is necessarily obligated, necessarily obligated. But it's also apparatus claims. I don't think you'll find a method claim in our jurisprudence that said if you're capable of performing the method, you're infringed. I mean, Your Honor, I don't know how much time you want to waste on this. The point of the matter is that your argument to us to get over this is that even if there was a mistake in the claim instruction, a harmless error, you didn't appeal it. That's exactly right. Because there's not a single piece of evidence in the record that was made up to your client having been legally obligated to have a computerized method. That's exactly right, Your Honor. And the important thing is when you read their brief and when you look at the evidence, the linking, and all you see throughout their brief and what you see throughout their testimony is this whipsawing essentially saying there's an obligation, a contract, the contract to pay, that's there, no question. Let's not belabor this now. Your Honor, I'm interested in the Bilski issue, and you've used about half your time already. We do have briefs. Why would it be an abuse of discretion or why wasn't it an abuse of discretion for the judge not to have honored the other side's request to apply Bilski when he had it the very day it was issued? So, Your Honor, Judge Bennett applied the Eighth Circuit rule, the Sherman case. That's the case he talks about. Sherman says good cause, you have to have good cause to amend. The Supreme Court has said, for example, in the Cardinal Chemical case, that we have to reach validity even though there's no infringement, in fact, an advisory ruling on, because it's important to get rid of invalid facts. Right. Now, why wouldn't the Supreme Court's admonition there and other cases supersede a local rule? Your Honor, there's no question. This is a threshold issue. The Bilski case calls it a threshold issue. We raised it the day this case came down, and what you need to do is look at Judge Bennett's paragraph in which he denied the motion and read that, because it makes no logical sense. He says, Transamerica's primary problem... What page in the record? This is Appendix 240 to 241, but it's the page in the red brief. They've quoted it at page 47 of the red brief. And here's what Judge Bennett says. Transamerica's primary problem with the timing of the assertion of this claim is its concession that it timely considered pursuing such a claim or defense, but decided it would be too hard. Well, that is an error of law under any standard, because Transamerica could not have conceded that it timely considered the defense. It didn't exist. Your Honor, if you look at this... Wait, wait, wait. Why do we know it didn't exist? Under State Street, it looked like it was... I mean, that was the precedent that was going to hold it. Oh, State Street. Right. Well, that was existing. Now, why would it have been mandatory to try to bring a challenge to the district court to a court to an opinion of this court? Your Honor, if anybody reading this patent who's familiar with State Street would know that this patent was likely valid under State Street's concrete and tangible result test. If you know State Street, you look at this patent, it's likely valid. Anybody who knows this court's decision... State Street were apparatus claims. This is a method claim. Why did you say that an apparatus claim that uses means plus function apparatus language necessarily means a method claim? Well, Your Honor, I think whether State Street would... I mean, State Street, you're right, but I think in the patent bar, this concrete test, people would have looked at this patent under State Street and believed it likely valid. Likely valid. This test, the other test this court has had, under the Bilski standard, anybody looking at this would see the case as likely invalid. The Bilski case turned this patent from likely valid. Sure, it could have been. Your Honor, we do not challenge that we could have raised Section 101 earlier. The statute existed. People raise issues that are likely losers, and that's how they get to this court en banc. So certainly Section 101 could have been raised, but the defense is Bilski struck the State Street test. It struck three lines of test under which this patent might have survived, likely would have survived. When this court granted Bilski, it struck those tests. This patent went from likely valid to likely invalid. If not invalid, at least highly vulnerable. On that day, when Bilski came down, the law changed. Not the first principles, the Supreme Court law is still the same, but this court had entered a number of intervening cases, and under those intervening cases, it would have been, I won't say impossible, and it certainly wouldn't have been a Rule 11 violation to say the Supreme Court cases are out there, but with the Federal Circuit's intervening case, this wouldn't have gotten far, and it would have been a fair judgment. Lincoln says it was a tactical decision not to raise 101. That suggests that Transamerica saw some advantage to not raising Section 101 earlier. You can't reach that conclusion that somebody would see that. We cite even Microsoft, no less a company than Microsoft. I assume for purposes of argument that the panel agreed with you that the trial judge erred in not allowing you to mount your Bilski argument. I take it your argument here is that we should adjudicate that issue. We know enough about the patent in suit that this panel is capable of holding that the claim is invalid. Your Honor, not only that, but Mr. Brown, Lincoln's counsel, told the district judge below that this case would never need any discovery because it's a purely legal issue. Can you say that with respect to the 101 issue? With respect to the 101 issue. Do you have a record cite for that? Yes, Your Honor. It is at page 14956 to 14957. Quote, I ask that you reject any request for expert discovery. The experts will never see the light of day in court because if you choose to address Bilski, it will be done as a matter of law prior to trial. That was the argument made to Judge Bennett below. Your Honor, there's one other thing I just need to raise with the Sherman case, just because of the intervening. We could not have raised this under the Sherman case when this court granted en banc because the Sherman case reversed a district court for abuse of discretion for allowing an amendment when there was no change of law. If we had gone to the district court when this court granted en banc, which is what the district court said we should have, the argument would have been you post-amendment, post the deadline for changing, there's been no change in the law, and all we would have said is, well, we want to add it now because we're anticipating, we're being clairvoyant. The change came when this court granted Bilski. There's no diligence issue. We raised it that day. No diligence issue. The law was different. Under Sherman, this was good cause. And the Eighth Circuit standard for abuse of discretion, by the way, is clear error of judgment. And I submit, Your Honor, to suggest that we had to raise it before is wrong. I've run out of time. We'll give you your rebuttal time back. Thank you, Your Honor. Mr. Brown. Good morning, and may it please the Court. The judgment below should be affirmed because the jury got it right in the verdict, and the judge got it right in both his pre-trial orders and post-trial orders. On the question of Step E. Pass it over to Bilski first. Yes, Your Honor. The trial court did not abuse its discretion in denying the leave for amend, where it found that Transamerica could have and should have raised a 101 defense, at least at the point in time in which this court entered its en banc notice saying that State Street Bank would be reviewed. Question number five of the Bilski order was should State Street be overruled? At that point in time, Transamerica should have concluded that its defense that it says was available at that point in time might be even better. It chose not to. It sat on its hands. It delayed. What about the Sherman case that he cited? I think the Sherman case, the judge appropriately applied Sherman and said that the court would not have abused its discretion if it would have granted a motion for leave to amend at that point in time. I don't read Sherman the way counsel reads Sherman. Suppose that I were to agree with appellant that Bilski affected a major change in our law, and even a major change that could likely result in many claims that would have been likely valid before are now likely invalid after. Suppose I believe it was that sweeping of a change. Would I then reverse? Would that mean that there was an abuse of discretion here? Because that seems to be something important that the lower court premised its decision on. No, Your Honor, I don't think you would reverse because the lower court actually recognized that Bilski did change the law by in fact doing away with the State Street Bank standard. But what the court said was you should have known that because of the way the order setting the en banc review was crafted, for one. The Curtis publishing case was a Supreme Court case that Transamerica relies upon. On that point, you shouldn't predict or require clairvoyance. There, however, the Supreme Court looked carefully at the set of facts before it, including the fact that there was a cert petition granted in the New York Times case, and the Supreme Court said there was nothing in that grant, none of the questions that were crafted there that would have suggested to the lawyers in that case that their constitutional defense might be better. Here we have the exact opposite. Your five questions for en banc review were clear and suggested to any patent practitioner that, wow, 101 might be different, I better make sure I've got my 101 defense. We didn't even know what was going to come out of that case. Understand. How were they supposed to know? Well, they knew that the State Street Bank standard... In fact, they don't even know exactly what has come out of that case. They knew that the State Street Bank standard was at issue. Well, if they were patent lawyers, they knew what happened to Bilski at the board. That happened a long time before this. The patent board had thrown the claims out on Bilski, and they're the ones that make these patent lawyers look to the board before they look to us. You would have known that State Street was somewhat in peril, at least at the patent office. I agree, Your Honor, and that's why the court said that at the latest... It just seems to me that you have to tax patent lawyers with the knowledge of what's going on at the board as well as what's going on in the court. Agree completely. This is an abuse of discretion standard of review, isn't it? It is, Your Honor. With respect to the suggestion that this court could hear the Bilski issue for the first time, assuming that you found an abuse of discretion, yes, it's a legal question, but there are subsidiary legal issues. The LEA case says for you to hear something as a body... You mean subsidiary factual issues? I believe there are, Your Honor, yes, factual questions in terms of a review. You said subsidiary legal, but I'm... Subsidiary factual questions, thank you, Your Honor. Like what? Well, look to the claims themselves and the questions... Thus far, they were held as a matter of law, right? But even there, just last week in the trading technology cases, there was an acknowledgment that there are underlying issues that are factual in nature. Yes, ultimately a conclusion of law, just like obviousness is conclusion of law. We can't in a single panel decision overrule Sibor and Bank. No matter how much we might want to, we can't do that. Sibor says the whole thing, kit and caboodle is law, so I don't see how claim construction is somehow manifest itself now as a subsidiary factual issue. So what other factual issues do you have? Well, the question would be... The claims are written to one of skill in the art, right? So you look to what... What I'm trying to get at is that you've got a concession down below that this doesn't need any experts, right? You've got... And to the extent that you're trying to backdoor facts in through claim construction, Judge Moore is right, addressed... Maybe the panel would like to hear that, but the law doesn't. I would think you'd be telling me as fast as you can talk why this claim passes muster under Bill's case. Because, I mean, you may be going downstream quick. Point number one then, Your Honor, I'll address that point very quickly. The preamble of the claim breathes life and meaning into the claim. The court found it, the parties agreed to it, there's a computerized method that is expressly called out in the claim itself. The parties stipulated, stipulated fact, that claim 35 is directed to a computerized method for administering a variable annuity claim. A computer is part and parcel of this claim through every step. The district court, in construing the claims, said, emphasized that the determining step... And it was in State Street too. Understand, and I don't know that under Bilski, the State Street patent would be invalid. We know that the test was struck, but nobody has said whether or not that patent would withstand, and in my view it would, based both on the machine prong and the transformation prong. And the same would be here too. The machine, the computer that is programmed, pursuant to the various steps, and if you look to the specification, the flow charge and the specs show the actual computer technology that's at play here, and it's claimed, and the steps are actually performed via the computer. And the district court said, emphasized, that the determining step is performed by a computer. And the computer is a matter of convenience only, right? All these steps could be performed manually. I don't know that that's the case, given the environment that we're in. The trial evidence was 59,000 annuity policies being administered. None of that's part of the claim. Well, understand, I was responding to... You're going to sue someone for infringement if they're doing it once, so 59,000 is not relevant. I think Judge Clevenger's point is, it's just a matter of convenience, the computerized part with regard to the invention. I disagree with that, because it's a real-world claim. The claim applies to a variable annuity plan that insurance companies... Well, that would be true within the algorithm driven through a computer. I mean, that's just such a method for computing how to buy and sell stocks, and you just run a fancy algorithm through a computer. But the computer here is integral to the claim itself. It breathes life and meaning into the claim, pursuant to the district court. He only breathes life into saying that the method that's described in steps A through E are going to be performed by a computer that has a program in it. But in the insurance industry, in which you're processing hundreds of thousands of insurance policies, you can't look at that and say the computer is mere convenience. The computer is a critical part of this invention, and it's a critical part of the claim by virtue of that. Can I turn back to step E? Well, let me just say this to you on the transformation side. State Street Bank indicated there that, although recognizing it was an apparatus claim, but the data was transformed into a share price. And the Comiskey opinion in 2009 noted what State Street Bank said with respect to transformation. Here, there is data. It's representative of a tangible object, money. And that money is being manipulated, is being transformed, by virtue of the storing step, the determining step, and the monitoring and adjusting step. That would then suggest that any computer program that added 2 plus 2 and spit out the number 4 is making a transformation because it started with 2 and 2 and spit out 4. That doesn't seem like a very compelling way. I mean, a transformation test would then be meaningless. Well, I understand, but State Street Bank, the Comiskey court actually cited with approval on the transformation. Well, Comiskey was prior to Bilski. Bilski set out all new landscape. The Comiskey 2009 opinion, post-Bilski, actually endorsed State Street Bank with respect to the transformation. With respect to the infringement issue and the Step E issue, I was surprised to hear Transamerica's counsel say today that they're not in any way challenging the court's jury instruction. What is the exact evidence, exactly the evidence in the record, that Transamerica has a computerized method that will make a payment as an account is being exhausted? Well, in the first instance, the court's claim construction would not require that. As it's being exhausted, that's what I said, as it's being, not after. I'm sorry. I said as it's being, and that's what the claim construction requires. Defendant's Exhibit 1146, which is in the appendix at page 21934, that particular chart shows Yeah, that's the computerized method for payment 13. Exactly, Your Honor. Yeah, and it does all claim 13 except for the payment. The payment's done manually. The word manual there, though, when you look to the testimony about that, their chief actuary, Mr. Ziegler, from pages 16,000 to 16,009, acknowledges that that payment step is one that's labeled manual, is a step that's performed using a computer. Using the distribution services and the check writer system, it's part of the computer systems used by Transamerica. Now, he qualified it. He said, well, it could be, in one instance, and usually is, in another instance, using a computer. No, it never has been. There's never been a payment 13 that's never been made. That is correct, Your Honor, because the circumstance that would lead to that is never been made. No, I don't just mean the facts. You're stuck with the facts of the record, which is there has never been a payment 13, 14, or 15. But I don't think I'm stuck with the facts because the court's claim construction makes clear that exhaustion is not required. And why it's not required is because of 13. 13, 14, and 15 are, in essence, exhaustion. Post-exhaustion is not required. But 13, 14, and 15 meet his definition of exhaustion because the amount of the payment exceeds the amount of the remaining income. If we read step E to be designed to cover payments 13 through 15 only, right? If you do that. If we do that, then there's no evidence of infringement. No, I think there's evidence because they're obligated to perform that service and DX 1146 actually provides that. They're not obligated to perform that service through a computerized method. And that's what your claim is due. They're obligated to, as their writers require, continue paying if it reaches zero. But they're not obligated to perform it through a computerized method. There's nothing in any of the writers that say they have to do it through a computerized method. But we know what they are administering the writers with. Vantage. Correct. And Vantage does not allow, once the amount left in there would be less than the payment to be made, it does not continue to automate the process. Vantage does do that last payment. But that last payment is part of the process. Yeah. And it's not part of the computerized method. No, it is part of the computerized method because Vantage triggers the fact that the account value has reached a low level. Vantage then sends an automatic letter to a customer. Vantage triggers then the steps that are identified in DX 1146 that include multiple computer systems. And your argument is that the page you just pointed us to, which is the computerization of payment 13, it is clearly computerized down to cutting the check and the computerized method says cut the check. And so your argument is that's, you know, showing you that it's a computerized method for cutting the check. The fact that it's manual is just like the fact, you know, how these checks get delivered in the mail. And that happens to be a manual step. But I'm going to make a point on that. Step C says determining account value and then making payment by withdrawing. Making payment by withdrawing the money from an account. That's how a payment is made. Withdrawing money from an account. Transamerica commits. If I have a computerized method for, say, making an apple pie and it says, you know, steps, yada, yada, yada, yada. And I take that patent home and I show it to my wife and I say, gee, you know, this is a very neat idea. Maybe we should make a pie sometime. And she says, well, I'm a computer geek. I'll put the program in my computer. She hasn't made the pie. She puts the computer program in her computer. Is that an act of infringement? That would not be. She's not obligated to use that. She has to. Just forget about the obligation. She has to use it. Well, in that context, yes. Let's say my wife never, the computerized method for making the apple pie lies on her computer for a long time, but it never gets used to make a pie.  I agree with that, Your Honor. Now, if, under your view of the jury instructions, right, if my wife had irrevocably obligated herself to use the computer method to make a pie, then a jury could find infringement. Yes, Your Honor. They're going to turn kind of dead. Because, I mean, the short of the matter is that even if, even if the page you referred me to, which I ought to know, I'm sorry, which I know is the computerized method for payment 13, even if that called for computerized cutting of a check and computerized delivery of the money through, you know, the wire system, the mere writing of that program would not be an act of infringement. You told me that. Okay. So there has to have been use of the method. Use or obligated to use. I understand that. Okay. But there is no evidence in this record that I found that Transamerica ever legally obligated itself to, let's assume that the computer was programmed to do all the steps electronically, never obligated themselves to do it in the sale of a writer or otherwise. And, Your Honor, if I may, very briefly, the writers themselves are what are used to actually... I understand how it works in the real world, and I understand that they may be using a computer, but I don't see, you need to point to me evidence in the record where Transamerica legally obligated itself, in my apple pie hypothetical, to switch on the computer and use the steps. And show me where they did it. They didn't do it. They're legally obligated. In fact, they told this court in seeking an emergency motion of the stay that without an injunction, they'd be violating their contractual obligations and their societal obligations. Well, now, let's talk about what was in front of the jury. Yes. Because you've reduced yourself, I believe, to relying on the jury charge that allows infringement not on the basis of actual use, but legally obligated use. Your Honor, but on actual use, under the court's interpretation, step E is being performed every single time a payment is being made. Well, that depends on how we construe. I agree with you if we construe claim E to say even the first payment infringes step E, then sure. But if I, on the other hand, look at step E the way I tend to look at it, which is to say it's the heart of the invention, payments 1 through 12 are old art. And you couldn't get a patent on them. Those are just variable annuity payments with a chance to take out an exceptional piece in D. So what made the invention was E. And what made the invention was to say any annuity is a guarantee. Payments 1 through 12 are guaranteed. But there's a special guarantee in the patent, which is if you ever take down to zero or at zero, we'll continue to pay. So when the trial judge said guarantee, he wasn't meaning the only guarantee. The contract's all full of guarantees. And there's a special guarantee in E. So in terms of linking up the rider then to the contractual obligation, I'm sorry, to the obligation to perform using the method itself, Transamerica stipulated that the Vantage system was specifically tailored with custom programming to administer the riders. They spent thousands of hours looking at the contract terms themselves and then converting that into the Vantage system so that Vantage would then actually perform the steps. On my really nutty, simple hypothetical, that's just making certain that my apple pie formula is, you know, locked into the computer type. But an infringement requires me to use it or to have the legal gun against my head to require me to use it. And at the time that the jury evaluated this issue, at the time of trial, Transamerica was using that method. They were using the method. All right, I think we'll move on to the next thing at the time. Thank you, Your Honor. Thank you. Mr. Bauer. Thank you, Your Honor. See, I've been given three extra minutes. That's terrific. Just a few things. First, with respect to Judge Moore's question about the jury instruction, let me just read. This comes out of Markman. Notwithstanding the jury's verdict on review of a motion for J. Moll, the court retains the power and duty to say what the correct law is and then to examine the factual basis submitted to the jury and determine whether findings thereon are supported by substantial evidence. Wait. That was Markman at the Federal Circuit? Yes, Your Honor. Yes. Well, the Supreme Court then did something with it, and then we had Sybor in bank afterwards, which puts that issue to bed and overrules that part of Markman. Whether I like it or not, it's clear from trial. But if that's true, Your Honor, this is working on the fly. So if Markman's been overruled on that, then I apologize. I just had that quote. Well, the Supreme Court decided Markman, right? Right. So its opinion takes precedence over ours. And then we decided Sybor after the Supreme Court decided Markman. And Sybor, doesn't Sybor state quite clearly that all of claim construction is a matter of law? Is your interpretation of Sybor somehow different from that? No, not at all, Your Honor. All claim construction is absolutely claim construction. And all of the underlying components? Well, that's right. All I was pointing to, Your Honor, is the jury instruction, which wasn't objected, is open for this court to look at. That's all I meant to be talking about. The jury instruction's number seven. You mean even though there's no challenge to a jury instruction, we can say it was legally wrong? Yes, in the context of reaching the final conclusion here, I believe you can. Really? Under what authority can we review a non-challenged jury instruction? Well, it goes to the weight of the evidence here. Well, there's a difference between whether or not there's evidence to support a jury instruction and whether the jury instruction is correct. That jury instruction purports to give a test for infringement, not claim construction, infringement. Right. You're right. And, Your Honor, as you asked me before, we're living with that jury instruction today. I thought somebody gave me a quote and said, get this up there. I am sorry. The question about the computerized method, all right, let me just read. And this page citation wasn't in the brief. But this is what the closing argument was at the jury trial. This is page 16474. It's in the appendix. It just wasn't the citation. And this was Mr. Brown's closing to the jury. If you conclude that they infringe and to avoid infringement, they may decide to have all checks paid manually. Really? Is it credible? They'll decide to wait until 2021 to use computers. They're going to go 12 years without using any computers. That's the argument that's been made below. Riders using computers infringement, not computerized method. I don't think you're being fair to your adversary. I mean, they've pointed out, and you can run away from it if you want to, they've got an exhibit in there that shows computerized method of payment 13. There's no question about it. The only missing step is cutting the check. That's being done manually. No, Your Honor, that's exhibit 1146 that he's referring to. And if you look at page 8 of that, it's appendix 21914. This is a functional specification. And what it says is that the system will, the RPS, the repetitive payment system, will not modify for the GMLB rider until necessary. The system stopped. Vantage stopped. I understand that. My point is that their best argument to support the jury verdict is the jury looked at the computerized method for making payment 13. Right. And the only thing that was missing was, hey, it looks like the check is going to be cut manually. But guess what? The payments are already being made manually through the mail, so that's got to be okay. But it's not the payment being made manually. It's the check. And your argument to that, if you made it, was so what? It was never done. It was never done. But even if the check is cut manually, even if, you've broken the computerized method at that point because it's no longer an automatic system. Right? The claim requires making payment with a computerized method. Making payment. And that's automatic. That's electronic. Funds transfer is an automatic payment system. But having, is my time up? I'm sorry. Thank you. Thank you very much. Thank you for submitting. All rise. The honorable court is adjourned until tomorrow morning at 10 a.m.